Case 1:22-cr-20376-RKA Document 1 Entered on FLSD Docket 08/23/2022 Page 1 of 9

FILED BY \_\_\_\_mml\_\_\_\_ D.C.

Aug 23, 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**22-20376-CR-ALTMAN/REID**

CASE NO. _____

18 U.S.C. § 1343
18 U.S.C. § 981(a)(1)(C)

UNITED STATES OF AMERICA

vs.

**EVAN DANIEL TROMP,**

        **Defendant.**
_____/

**INFORMATION**

The United States Attorney charges that:

**GENERAL ALLEGATIONS**

At all times relevant to this Information:

1. Quanta Capital B.V. was a Curaçao corporation, incorporated in 2018, with its principal place of business in Curaçao.

2. Operational and Financial Advisory, LLC was a Florida corporation, incorporated in 2009, with its principal place of business in Miami, Florida.

3. Quanta Nominee, LLC was a Florida corporation, incorporated in 2018, with its principal place of business in Miami, Florida.

4. Defendant **EVAN DANIEL TROMP** resided in the Southern District of Florida and was the Managing Director of Quanta Capital B.V., the Managing Member and Registered Agent of Operational and Financial Advisory, LLC, and an Authorized Member and Registered Agent of Quanta Nominee, LLC.

## Definitions

5. "Bitcoin" was a type of cryptocurrency. Bitcoin were generated and controlled through computer software operating via a decentralized, peer-to-peer network. Bitcoin could be used for purchases or exchanged for other currency on currency exchanges. Bitcoin was commonly known as "BTC."

6. "Cryptocurrency mining" was the process that Bitcoin and certain other cryptocurrencies used to generate, or "mine," new coins and verify new transactions. Cryptocurrency mining involved vast decentralized networks of computers, sometimes referred to as "mining machines," around the world that verified and secured blockchains. In return for contributing their processing power and verifying transactions, computers on the network could be rewarded through newly created cryptocurrency.

7. A *"Ponzi"* or *"Ponzi* scheme" is an investment fraud scheme that involves the payment of claimed returns to existing investors from funds contributed by new investors. *Ponzi* scheme organizers often solicit new investors by promising to invest funds in opportunities claimed to generate high returns with little or no risk. In many *Ponzi* schemes, the participants focus on attracting new money to make promised payments to earlier-stage investors to create the false appearance that investors are profiting from a legitimate business. *Ponzi* schemes require a consistent flow of money from new investors to continue and tend to collapse when it becomes difficult to recruit new investors or when a large number of investors ask for their money back.

### COUNTS 1-4
### Wire Fraud
### (18 U.S.C. § 1343)

1. Paragraphs 1 through 7 of the General Allegations section of this Information are re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around 2017, through in or around 2022, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**EVAN DANIEL TROMP,**

did knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

## **PURPOSE OF THE SCHEME AND ARTIFICE**

3. The purpose of the scheme and artifice was for **EVAN DANIEL TROMP** to unlawfully enrich himself by soliciting investor money through materially false and fraudulent representations, and the concealment and failure to state material facts concerning, among other things, the profitability of and safety of investing in Quanta Capital B.V., Operational and Financial Advisory, LLC, and Quanta Nominee, LLC, the true nature of the business operations of his entities, his use of investor funds to pay off obligations to existing investors and his diversion of investor funds to his own personal accounts.

## **SCHEME AND ARTIFICE**

The manner and means by which the defendant sought to accomplish the purpose of the scheme and artifice included, among other things, the following:

4. From in or around 2017, through in or around 2020, **EVAN DANIEL TROMP** opened and maintained bank accounts in the name of Operational and Financial Advisory, LLC

3

and in his name at financial institutions located in the Southern District of Florida. **TROMP** had sole signing authority and control of these bank accounts.

5. From in or around 2017, through in or around 2018, **EVAN DANIEL TROMP** solicited investors to invest in his entities, Quanta Capital B.V., Operational and Financial Advisory, LLC, and Quanta Nominee, LLC, as well as in Bitcoin, other cryptocurrencies, and cryptocurrency mining services and trading. **TROMP** solicited investors by phone, e-mail, WhatsApp messages, and in-person. **TROMP** falsely and fraudulently represented he would manage these investment opportunities as part of his solicitation to investors.

6. To solicit investors, **EVAN DANIEL TROMP** made false and fraudulent statements to investors regarding the use of investor funds by representing, orally and in writing, that their money would be used to purchase cryptocurrency mining equipment/machines located in Miami, Florida and Sweden; that these machines would be used to mine cryptocurrency that would then be traded on cryptocurrency exchanges; and that there would "virtually [be] no risk of losing the invested capital" given the "multiple stop losses in place."

7. Contrary to his representations, **EVAN DANIEL TROMP** did not use investor funds to purchase cryptocurrency mining equipment or to trade newly-minted cryptocurrency on cryptocurrency exchanges. Instead, **TROMP** falsely and fraudulently used investor funds to pay for personal expenses, to make transfers to, and withdrawals from, his personal bank accounts, to enrich family members, and to make payments to existing investors with new investor money.

8. **EVAN DANIEL TROMP** instructed investors to invest in his entities by transferring funds electronically via interstate wires to a bank account that he controlled in the Southern District of Florida.

9. **EVAN DANIEL TROMP** operated his business as a *Ponzi* scheme in which he used newly-raised investor proceeds to pay off obligations owed to existing investors. This *Ponzi* model allowed **TROMP** to conceal the fraudulent nature of the scheme and to further conceal his failure to generate revenue or profits from his business operations.

10. To induce investors to invest in his entities, **EVAN DANIEL TROMP** made materially false and fraudulent statements to investors, and concealed and omitted to state material facts to investors, including, among other things, the following:

### Materially False Statements

(a) that investor proceeds would be used to purchase cryptocurrency mining equipment that would be used to mine bitcoin and other cryptocurrencies;

(b) that the mined cryptocurrency would then be traded on cryptocurrency exchanges such as Coinbase and Kraken;

(c) that investors could expect a return on their mining equipment investments within approximately 6-7 months;

(d) that investors would receive monthly payments on their investments;

(e) that investors could receive a return on their investment as high as 20%; and

(f) that the investment opportunity that **TROMP** was offering was safe, secure and profitable.

### Concealment and Omission of Material Facts

(g) that **TROMP** diverted investor proceeds to pay for his personal expenses, to make transfers to, and withdrawals from, his personal bank accounts, to make payments to family members, and to make payments to existing investors; and

(h) that there were no cryptocurrency mining machines to sell and that as a result, **TROMP** could not return investors their capital investment.

## USE OF WIRES

11. On or about the dates specified as to each count below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**EVAN DANIEL TROMP,**

for the purpose of executing and in furtherance of the aforesaid scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, did knowingly transmit and cause to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, signals, pictures, and sounds, as described below:

| Count | Approx. Date | Description of Wire |
|---|---|---|
| 1 | February 26, 2018 | Investor R.R. wired $20,000 from Buenos Aires, Argentina, to **EVAN DANIEL TROMP's** Operational and Financial Advisory, LLC, corporate Chase bank account ending in #3513 located in the Southern District of Florida. |
| 2 | March 26, 2018 | Investor R.R. wired $50,000 from Buenos Aires, Argentina, to **EVAN DANIEL TROMP's** Operational and Financial, Advisory, LLC, corporate Chase bank account ending in #3513 located in the Southern District of Florida. |
| 3 | July 25, 2018 | Investor F.O. wired $18,000 from San Francisco, California, to **EVAN DANIEL TROMP's** Operational and Financial Advisory, LLC, corporate Chase bank account ending in #3513 located in the Southern District of Florida. |

6

| Count | Approx. Date | Description of Wire |
|---|---|---|
| 4 | August 7, 2018 | Investor R.R. wired $45,000 from Buenos Aires, Argentina, to **EVAN DANIEL TROMP's** Operational and Financial Advisory, LLC, corporate Chase bank account ending in #3513 located in the Southern District of Florida. |

In violation of Title 18, United States Code, Section 1343.

## FORFEITURE
## (18 U.S.C. § 981(a)(1)(C))

1. The allegations in this Information are re-alleged and by this reference fully incorporated herein for the purpose of alleging criminal forfeiture to the United States of America of certain property in which the defendant, **EVAN DANIEL TROMP**, has an interest.

2. Upon conviction of Title 18, United States Code, Section 1343, as alleged in this Information, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such violation, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c).

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

YISEL VALDES
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

EVAN DANIEL TROMP,

_____Defendant._____/

CASE NO._____

**CERTIFICATE OF TRIAL ATTORNEY***

**Superseding Case Information:**

**Court Division:** (Select One)
- [✓] Miami
- [ ] Key West
- [ ] FTL
- [ ] WPB
- [ ] FTP

New defendant(s)   [ ] Yes   [ ] No
Number of new defendants _____
Total number of counts _____

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.
3. Interpreter: (Yes or No) **No**
   List language and/or dialect _____
4. This case will take __0__ days for the parties to try.
5. Please check appropriate category and type of offense listed below:

   (Check only one)
   - I     0 to 5 days       [✓]
   - II    6 to 10 days      [ ]
   - III   11 to 20 days     [ ]
   - IV    21 to 60 days     [ ]
   - V     61 days and over  [ ]

   (Check only one)
   - Petty        [ ]
   - Minor        [ ]
   - Misdemeanor  [ ]
   - Felony       [✓]

6. Has this case previously been filed in this District Court? (Yes or No) **No**
   If yes: Judge _____ Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter? (Yes or No) **No**
   If yes: Magistrate Case No. _____
   Related miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the District of _____
   Is this a potential death penalty case? (Yes or No) **No**

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)? (Yes or No) **No**
8. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) **No**
9. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)? (Yes or No) **No**

_____
Yisel Valdes
Assistant United States Attorney
Court ID No.    A5502330

*Penalty Sheet(s) attached

REV 3/19/21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**:  Evan Daniel Tromp

**Case No**: _____

Counts #: 1-4

Wire fraud

18 U.S.C. § 1343
* **Max. Term of Imprisonment:** 20 years
* **Mandatory Min. Term of Imprisonment (if applicable):**
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $250,000 or not more than the greater of twice the gross gain or loss

*Refers only to possible term of incarceration, supervised release and fines.  It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.